**Charles E. CARDWELL,**
**Ph.D., Plaintiff,**

v.

**INVESTOR'S ANALYSIS,**
**INC., Defendant.**

**Civ. A. No. 85–2155.**

United States District Court,
District of Columbia.

Oct. 31, 1985.

John A. Borsari, Washington, D.C., for plaintiff.

J. Walter Lund, Washington, D.C., for defendant.

## MEMORANDUM

GASCH, District Judge:

This is a trademark case concerning use of the phrase "The Astute Investor" as the title of a financial newsletter. Plaintiff seeks trial *de novo* of issues previously raised before the U.S. Trademark Trial and Appeal Board. Defendant has moved to dismiss the case for lack of jurisdiction and venue; plaintiff has responded by moving in the alternative to transfer the case under 28 U.S.C. § 1406(a). For reasons discussed below, the Court concludes that it lacks jurisdiction and venue and orders the case transferred to the U.S. District Court for the Eastern District of Pennsylvania.

## I. THE FACTUAL BACKGROUND

Since at least April, 1982, plaintiff, a citizen of Tennessee, has published a financial newsletter entitled "The Astute Investor" and has distributed the newsletter to subscribers nationwide. In December, 1983, "The Astute Investor" was registered as plaintiff's mark by the state of Tennessee. On November 28, 1983, plaintiff filed an application for federal registration of that mark with the U.S. Patent and Trademark Office.

The defendant is a Delaware corporation with its principal place of business in Paoli, Pennsylvania. On February 1, 1983, defendant filed an application in the Patent and Trademark Office for registration of the mark "The Astute Investor" as the title of a financial newsletter. Defendant claims to have used "The Astute Investor" for that purpose since at least 1979.

Defendant's application was approved by the Patent and Trademark Office and was published for opposition on December 20, 1983. Ten days later, plaintiff filed a notice of opposition to registration of "The Astute Investor" as defendant's mark. Defendant filed an answer to that opposition on April 6, 1984.

During the course of the opposition proceeding, plaintiff apparently failed to take testimony during his testimony period and failed to introduce any evidence. Plaintiff's request for extension of his testimony period was denied. The U.S. Trademark Trial and Appeal Board subsequently granted defendant's motion to dismiss plaintiff's opposition. Plaintiff then filed the instant case, which seeks reversal of the Board's decision and an order requiring

denial of defendant's registration and issuance of a certificate of registration of "The Astute Investor" as plaintiff's trademark.

## II. DISCUSSION

Defendant's motion to dismiss makes two allegations. The first is that this Court lacks personal jurisdiction over defendant; the second is that this Court lacks venue. These contentions will be addressed in turn.

### A. Lack of Personal Jurisdiction

■ Defendant is not incorporated in the District of Columbia and does not "reside" here. Consequently, this Court has personal jurisdiction over defendant only if it fits within one of the categories of the District's long-arm statute. *See* D.C.Code § 13–423 (1981 ed.). Plaintiff vigorously contends that the long-arm statute confers personal jurisdiction because defendant is "doing business" in the District or because defendant caused tortious injury in the District. *See id.* §§ 13–423(a)(1), (a)(4).

The Court need not address these contentions, however, because plaintiff has not met the requirements of Section 13–423(b), which provides, "When jurisdiction over a person is based solely upon [the long-arm statute], only a claim for relief arising from acts enumerated in this section may be asserted against him." Thus, the long-arm statute does not confer personal jurisdiction when the claims asserted are "unrelated to the acts forming the basis for personal jurisdiction." *Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 785 (D.C. Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2399, 81 L.Ed.2d 355 (1984).

Plaintiff cites *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors, Ltd.,* 647 F.2d 200 (D.C.Cir.1981), as authority for the contention that plaintiff's

claim arises from defendant's contacts with the District. *Kaiser Stuhl Wine* is distinguishable, however, because the plaintiff in that case had asserted a trademark infringement claim in addition to a claim for cancellation of trademark registration. *Id.* at 207. The court's finding of personal jurisdiction over the cancellation claim was premised on a desire to avoid requiring the plaintiff to litigate his claims separately. *Id.* That concern is not a factor in this case, where plaintiff seeks only reversal of the Board's decision.

As such, plaintiff's claim arises from the Board's decision, not from defendant's contacts with the District. The Board's decision was unrelated to those contacts; indeed, plaintiff's statement of opposition to the registration did not mention defendant's contacts with the District, much less allege harm arising from them. As such, this Court cannot find personal jurisdiction over defendant through the long-arm statute.[1]

### B. Lack of Venue

■ Plaintiff's claim is brought pursuant to 15 U.S.C. § 1071(b), which permits district courts to hear appeals of decisions of the Trademark Trial and Appeal Board. Defendant's motion to dismiss for lack of venue is based upon the language of Section 1071(b)(4), which provides that, in such cases,

If there be adverse parties residing in a plurality of districts not embraced within the same State, or an adverse party residing in a foreign country, the United States District Court for the District of Columbia shall have jurisdiction....

Thus, this Court has jurisdiction and venue by virtue of Section 1071(b)(4) only if there are two or more defendants residing in separate districts or if there is a defendant residing in a foreign country.[2] Neither situation applies to this case.

---

1. The Court also notes that defendant's appearance before the Trademark Trial and Appeal Board does not constitute "doing business" for purposes of long-arm jurisdiction. *See E. & J. Gallo Winery v. Candelmo,* 192 U.S.P.Q. 210, 212

(D.D.C.1976); *Naartex Consulting Corp.,* 722 F.2d at 786–87.

2. The literal reading of § 1071(b)(4) is amply supported by the case law in this circuit. *See, e.g., Barr Rubber Products Co. v. Burlington*

Where, as here, Section 1071(b)(4) is inapplicable, the general laws governing federal jurisdiction and venue apply. *E. & J. Gallo Winery v. Candelmo*, 192 U.S.P.Q. 210, 211 (D.D.C.1976); *Besuner v. Faberge, Inc.*, 379 F.Supp. 278, 279 (N.D.Ohio 1974). In this case, subject-matter jurisdiction over plaintiff's claims clearly is conferred by 28 U.S.C. § 1338(a). Under the general venue statute, however, venue lies "only in the judicial district where all defendants reside, or in which the claim arose...." 28 U.S.C. § 1391(b) (1982). Where the defendant is a corporation, its "residence" for venue purposes may be found in "any judicial district in which it is incorporated or licensed to do business or is doing business...." *Id.* § 1391(c). The plaintiff in this case does not reside in the District of Columbia, nor is defendant incorporated or licensed to do business in this district. Accordingly, venue lies in the District only if it is established that plaintiff's claim arose in the District or that defendant is doing business here.

"Where the claim arose" for venue purposes has been discussed at length by the Supreme Court, *Leroy v. Great Western United Corp.*, 443 U.S. 173, 185, 99 S.Ct. 2710, 2717, 61 L.Ed.2d 464 (1979), and by the court of appeals for this circuit, *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant*, 760 F.2d 312 (D.C.Cir.1985); *Reuber v. United States*, 750 F.2d 1039 (D.C. Cir.1984). Those cases state that, under Section 1391(b), a claim arises either at the residence of the defendant or in a more convenient forum in terms of availability of witnesses and documents. Where, as here, the defendant resides in another district, many of the relevant witnesses and records are located there, and the defendant's use of "The Astute Investor"—the action giving rise to plaintiff's claim—was investigated there, "the claim arose" in that district.

Whether defendant is "doing business" in the District for venue purposes presents a closer question because the law concerning what constitutes "doing business" under Section 1391(c) is unsettled. *See* 1 J. Moore, *Moore's Federal Practice*, ¶ 0.142[5.–1–3] (1984); *Johnson Creative Arts v. Wool Masters, Inc.*, 743 F.2d 947, 952–53 (1st Cir.1984). Generally, however, cases in which courts have found corporations to be "doing business" in a given district involve substantial contacts, such as employing an agent, maintaining an office, or hiring a distributor. *See, e.g., Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 750 F.2d 1516, 1523 (11th Cir.1985); *Mutual International Export Co. v. Napco Industries, Inc.*, 316 F.2d 393, 397 (D.C.Cir. 1963).

Here defendant's business contacts with the District are far less substantial. Defendant does not have an agent, distributor, or office in the District. Defendant's only contacts are 22 District residents who subscribe to defendant's publication and pay defendant by return mail. In the past year, gross revenues from these subscriptions amounted to $6,700, less than one percent of defendant's total gross income.

Two recent cases indicate that this activity is not enough to warrant a determination that defendant is "doing business" in the District. *See Noxell Corp.*, 760 F.2d at 314, 316 n. 7 (defendant not "doing business" in District when District was situs of less than 1.5% of defendant's total sales); *Johnson Creative Arts*, 743 F.2d at 955 (defendant not "doing business" when total sales in relevant district amounted to less than $8,800).

Accordingly, the Court determines that venue is not proper under either Section 1391(b) or Section 1391(c). The Court thus turns to plaintiff's alternative motion to transfer under 28 U.S.C. § 1406(a), which permits transfer "if it be in the interest of justice."

The Court concludes that the interests of justice support transfer of this case to the district court for the Eastern District of Pennsylvania, where defendant maintains its principal place of business. If the case is not transferred, plaintiff's claims would

*Mills, Inc.*, 306 F.2d 268, 269 (D.C.Cir.1962); *Hayes v. Livermont*, 279 F.2d 818, 818 (D.C.Cir.

1960); *Chris Laganas Shoe Co. v. Watson*, 221 F.2d 881, 882–83 (D.C.Cir.1955).

be barred by the 60-day limitation of 15 U.S.C. § 1071(b). This Court previously found that transfer was warranted when "a dismissal may effectively preclude the plaintiff from appealing the decision of the Trademark Trial and Appeal Board." *E. & J. Gallo Winery*, 192 U.S.P.Q. at 213; *see also Hayes v. Livermont*, 279 F.2d at 818 (suggesting transfer under § 1406 in similar trademark case). That this Court lacks jurisdiction over defendant does not prevent transfer under Section 1406. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466, 82 S.Ct. 913, 915, 8 L.Ed.2d 39 (1962); *Naartex Consulting Corp.*, 722 F.2d at 789.